**JJR 1, LLC;  John H. Davis and Cheryl Phillips, Plaintiffs–Appellants,**

**v.**

**MT. CRESTED BUTTE, a municipal corporation, and Lagniappe Development, LLC, Defendants–Appellees.**

**No.  05CA2553.**

Colorado Court of Appeals, Div. III.

March 22, 2007.

Scott Armitage, P.C., Scott Armitage, Westminster, Colorado, for Plaintiffs–Appellants.

Doehling & Driscoll, P.C., Gary L. Doehling, Jeffrey L. Driscoll, Grand Junction, Colorado, for Defendant–Appellee Mt. Crested Butte.

Nancy Bentson Essex, P.C., Nancy Bentson Essex, Crested Butte, Colorado, for Defendant–Appellee Lagniappe Development, LLC.

Opinion by Chief Judge DAVIDSON.

In this action concerning obstruction of views of Crested Butte mountain from their property, plaintiffs, JJR 1, LLC, John H. Davis, and Cheryl Phillips, appeal from the judgment of the trial court dismissing their C.R.C.P. 57 and 106(a)(4) and 42 U.S.C. § 1983 claims against defendants, Mt. Crested Butte, a municipal corporation (Town), and Lagniappe Development, LLC. We affirm.

Plaintiffs are absentee owners of a plot of real property in the Town containing three townhouses that currently have unobstructed views of Crested Butte mountain. Prior to June 2, 2005, Lagniappe filed an application with the Town Planning Commission to develop a parcel of land adjacent to plaintiffs' property. The Planning Commission scheduled June 8, 2005 as the date for a public meeting to review Lagniappe's permit request. According to an affidavit of the Town Community Development Coordinator, notice of the meeting was posted on the property itself on June 3, 2005 and published in the *Crested Butte News* on June 2, 2005.

The Planning Commission convened on June 8, 2005 to consider Lagniappe's application, and ultimately issued the requested building permit. Plaintiffs did not attend the meeting and allege that they did not become aware of the permit request until July 1, 2005.

On August 23, 2005, plaintiffs filed a complaint against defendants seeking (1) review under C.R.C.P. 106(a)(4) of the Planning Commission's issuance of the building permit to Lagniappe; (2) a declaration under C.R.C.P. 57 that the notice provisions of the Town Zoning Code (Code) violated their state and federal due process rights; and (3) injunctive and declaratory relief pursuant to § 1983 against the Town for the alleged violations of their constitutional rights.

Defendants filed motions to dismiss asserting lack of subject matter jurisdiction under C.R.C.P. 12(b)(1); failure to state a claim under C.R.C.P. 12(b)(5); and summary judgment under C.R.C.P. 56. Plaintiffs then filed an amended complaint, which included a request for monetary relief pursuant to § 1983, and they moved to add a state law claim for injunctive relief pursuant to the Code.

The trial court granted defendants' motions and dismissed plaintiffs' claims. The court determined that it lacked jurisdiction to hear plaintiffs' state law claims seeking review of the Planning Commission's decision because plaintiffs had not filed their complaint within the thirty-day filing deadline provided by C.R.C.P. 106(b). With respect to plaintiffs' facial constitutional challenge and their federal claim brought under § 1983, the court determined that plaintiffs did not have a protected property interest that would entitle them to due process. Thus, the court dismissed those claims as well, and also denied plaintiffs' motion to add an additional claim for injunctive relief under the Code.

## I. Claims Brought Under C.R.C.P. 57 and 106(a)(4)

■ As a threshold matter, we agree with the trial court's determination that other than plaintiffs' claim for monetary relief under § 1983 and their challenge to the facial constitutionality of the Code under C.R.C.P. 57, it lacked jurisdiction to hear plaintiffs' claims seeking review of the Planning Commission's decision to issue Lagniappe a building permit.

C.R.C.P. 106(a)(4) provides for district court review of final, quasi-judicial decisions of a governmental entity. However, such claims must be filed within thirty days after the challenged decision was rendered. If the claims are not timely filed, the district court lacks jurisdiction to hear them. *See* C.R.C.P. 106(b); *Danielson v. Zoning Bd. of Adjustment*, 807 P.2d 541, 543 (Colo.1990).

Here, pursuant to C.R.C.P. 106(a)(4), plaintiffs sought district court review of the Planning Commission's June 8, 2005 final decision to issue Lagniappe a building permit. However, because plaintiffs did not file their complaint until August 23, 2005, they exceeded the thirty-day filing deadline. *See* C.R.C.P. 106(b). Accordingly, the trial court properly determined that it lacked jurisdiction to hear those claims. *See Danielson v. Zoning Bd. of Adjustment, supra*, 807 P.2d at 543.

■ Similarly, because C.R.C.P. 106(a)(4) is the exclusive remedy for reviewing quasi-judicial decisions, all claims that effectively seek such review (whether framed as claims under C.R.C.P. 106(a)(4) or not) are subject to the thirty-day filing deadline of C.R.C.P. 106(b). *See Bd. of County Comm'rs v. Sundheim,* 926 P.2d 545, 548 (Colo.1996). Thus, claims for declaratory relief under C.R.C.P. 57 that seek review of quasi-judicial decisions must be filed within thirty days. *See Tri–State Generation & Transmission Co. v. City of Thornton,* 647 P.2d 670, 676–77 (Colo.1982) (a party may not seek review of quasi-judicial decisions indirectly through a declaratory judgment if it was not entitled to the review directly under C.R.C.P. 106(a)(4)). Accordingly, plaintiffs' claim for declaratory relief asserting that the Planning Commission did not provide sufficient notice to them of Lagniappe's permit review meeting was also properly dismissed.

■ However, although plaintiffs' claim against the Town for monetary damages under § 1983 seeks review of quasi-judicial decisions, it also requests a "uniquely federal remedy" and, therefore, is not subject to the filing deadline of C.R.C.P. 106(b). *See Bd. of County Comm'rs v. Sundheim, supra,* 926 P.2d at 548–49. And because facial challenges seek review of quasi-legislative actions rather than quasi-judicial actions, they are also not subject to the filing deadline of C.R.C.P. 106(b). *See Tri–State Generation & Transmission Co. v. City of Thornton, supra,* 647 P.2d at 676–77. Thus, the district court properly exercised its jurisdiction over those claims.

## II.   Claim Under § 1983

Plaintiffs contend that the trial court erred by dismissing their § 1983 federal due process claim. Plaintiffs argue that the Town Code confers upon Town property owners a constitutionally protected property interest in the retention of scenic views and that, by permitting new construction on lots adjacent to their homes which blocked their views, the Town deprived them of this property interest without due process. We agree with the trial court that the Code does not create a protected property interest in the retention of scenic views.

### A.   Standard of Review

■ Because the Town attached to its motion to dismiss an affidavit from the Town Clerk, which the trial court did not exclude, we review the court's dismissal of plaintiffs' § 1983 claim under the standards set forth for summary judgment. *See* C.R.C.P. 12(b), 56; *McGee v. Hardina,* 140 P.3d 165, 166 (Colo.App.2005). Summary judgment is proper when the pleadings and supporting documents show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c).

Our review of the grant of summary judgment is de novo. *See A.C. Excavating v. Yacht Club II Homeowners Ass'n,* 114 P.3d 862, 865 (Colo.2005).

### B.   Section 1983

■ Section 1983 provides a private cause of action against anyone who, acting under color of state law, deprives a person of "any rights, privileges, or immunities secured by the Constitution and laws." *See Monez v. Reinertson,* 140 P.3d 242, 244 (Colo.App. 2006). When the basis for a § 1983 claim is, as here, an alleged deprivation of procedural due process, the claimant must show that (1) he or she has a constitutionally protected property right; (2) governmental action deprived him or her of that right; and (3) the deprivation occurred without due process of law. *See Hillside Cmty. Church v. Olson,* 58 P.3d 1021, 1025 (Colo.2002). Because we conclude that plaintiffs have no protected property right, we address only the first requirement.

#### 1.   Protected Property Right

■ A constitutionally protected property right is not limited to tangible physical property, but also includes a legitimate claim of entitlement to other circumscribed benefits. What falls within those parameters, however, is not set forth by constitution, but is largely a matter of state or municipal legislative enactment. *See Hillside Cmty. Church v. Olson, supra,* 58 P.3d at 1026; cf.

*Whiteside v. Smith,* 67 P.3d 1240, 1247 (Colo. 2003) (Workers' Compensation Act clearly created and defined protected property interests for injured workers).

■ Whether a protected property right exists in the outcome of a municipal land use decision depends entirely on the degree of discretion legislatively vested in the decisionmaker. If the ordinance or code grants a broad range of discretion, then neither the applicant nor affected third parties have a property interest in a particular outcome. *See Hillside Cmty. Church v. Olson, supra,* 58 P.3d at 1027–28 (adjacent property owners had no right to denial of neighbor's building permit where municipal code vested significant discretion in planning commission to approve or deny permit); *Weston v. Cassata,* 37 P.3d 469, 476 (Colo.App.2001) (discussing discretion of decision-maker test in the context of determining whether welfare benefits are protected property interests); *see also Cain v. Larson,* 879 F.2d 1424, 1426 (7th Cir.1989) ("In order to give rise to a constitutionally protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion....").

■■ When reviewing municipal enactments, we apply the same rules of construction used for interpreting statutes. *See Steamboat Springs Rental & Leasing, Inc. v. City & County of Denver,* 15 P.3d 785, 787 (Colo.App.2000). Our primary task in interpreting statutes and municipal enactments is to give effect to the intent of the drafters, which we do by looking to the plain language. *See Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo.1991).

Here, as we read the plain terms of the Code, whether to approve an application for a building permit is almost entirely within the Town's discretion. Specifically, the design review provision, § 21–299, states:

In order to preserve the natural beauty of the town and to ensure that growth and development is in accordance with the wishes of the residents and property owners thereof and to obtain the following objectives *all [new construction] shall be subject to design review, taking into account the following concepts:*

. . .

(2) To ensure that the location and configuration of structures are visually harmonious with their sites and with surrounding sites and structures, *and do not unnecessarily block scenic views from existing buildings* or tend unnecessarily to dominate the landscape or surrounding area....

(Emphasis supplied.) *See* Ord. No. 74–2, art. XI, § 1, section 21–299 (other paragraphs of this section refer, inter alia, to preservation of natural surroundings, lessening street congestion, promoting traffic safety, and minimizing pollution while conserving energy and other resources).

Although, as plaintiffs point out, this provision addresses the importance of scenic views and, in reviewing an application for a building permit, requires the Town to consider the impact on other property owners and the public, it only requires the Planning Commission to "take into account" such views in making its decision. To "take into account" means simply "to consider." *See American Heritage Dictionary* 1763 (4th ed.2004). Thus, although an evaluation of all the listed concepts is mandatory, disapproval of a project, should it fail to satisfy a particular concept, is not. That the Planning Commission must consider, among several other factors, any adverse effect of proposed construction on existing scenic views is not a prohibition against a permit request found to have such an impact.

Indeed, plaintiffs can point to no provision in the Code, nor do we find any, that forbids the elimination of scenic views or requires the Planning Commission to deny building permit requests for structures that will adversely affect existing scenic views. *Compare* Ord. No. 74–2, art. XI, § 5, 4–16–74, section 21–303(c) (setting forth "Approval Procedure" allowing Town's Planning Commission, after review and discussion at a scheduled meeting to "either approve [or] disapprove ... the design of the building development or project") *with* Ord. No. 88–4, § 1, 6–7–88, section 21–601 (limiting "vested property rights" to "the right to undertake

and complete the development and use of property under the terms and conditions of a site specific development plan, within three (3) years of approval of such plan").

### 2. Notice and Participation

■ Because plaintiffs do not have any constitutionally recognized property interest in the preservation of scenic views, plaintiffs also do not have a protected property interest in notice of and participation in the proposed design review.

■ A local procedure relating to the regulation of property, such as the design review process here, does not itself create a property right. *See Hillside Cmty. Church v. Olson, supra,* 58 P.3d at 1026–27 ("[T]he Federal Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures.... 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process is 'conferred, not by legislative grace, but by constitutional guarantee.' " (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985))); *Whatley v. Summit County Bd. of County Comm'rs,* 77 P.3d 793, 798 (Colo.App.2003)("[A] state's failure to follow its own procedural requirements 'does not create a violation of constitutional proportions.' " (quoting *Hillside Cmty. Church v. Olson, supra,* 58 P.3d at 1027)); *see also Crown Point I, LLC v. Intermountain Rural Elec. Ass'n,* 319 F.3d 1211, 1216 (10th Cir. 2003) (no constitutionally recognized property interest in state or local procedures).

### 3. *Wells v. Lodge Properties, Inc.*

*Wells v. Lodge Properties, Inc.,* 976 P.2d 321 (Colo.App.1998), relied on by plaintiffs, does not say otherwise.

In *Wells,* a division of this court addressed whether the plaintiff had standing to challenge the validity of a land use permit granted to adjacent property owners. For purposes of standing, the division held that the plaintiff had a legally protected interest in avoiding a hotel expansion onto adjacent property. *See Wells v. Lodge Props., Inc., supra,* 976 P.2d at 324.

However, the legally protected interest recognized in *Wells* for purposes of standing was not a substantive property interest entitled to federal constitutional due process protection. The protected interest recognized in *Wells* conferred standing upon the plaintiff to bring an action for judicial review of the county's decision to permit the development on the adjacent property. *See, e.g., Fedder v. McCurdy,* 768 P.2d 711 (Colo.App.1988) (property owner has right to rely on existing zoning classifications, and if that right is invaded, property owner has standing to seek judicial relief). But "[t]he opportunity granted abutting landowners ... to appeal decisions of planning and zoning commissions and zoning boards of appeal is purely procedural and does not give rise to an independent interest protected by the fourteenth amendment." *Hillside Cmty. Church v. Olson, supra,* 58 P.3d at 1026 n. 4 (quoting *Fusco v. Connecticut,* 815 F.2d 201, 205–06 (2d Cir.1987)); *see also Whatley v. Summit County Bd. of County Comm'rs, supra,* 77 P.3d at 798.

### C. Undisputed Facts

Plaintiffs also argue that in granting summary judgment, the trial court erroneously determined that the facts were undisputed. Specifically, plaintiffs challenge whether notice of the June 8, 2005 Planning Commission meeting was actually posted on the property and published in the *Crested Butte News.* However, because we have concluded that the trial court correctly determined that plaintiffs had no cognizable property interest, the accuracy of those facts is immaterial to the legal determination here. *See McGee v. Hardina, supra,* 140 P.3d at 166 (summary judgment improper only when alleged disputed fact is material to the dispositive legal issue); *see also Hillside Cmty. Church v. Olson, supra,* 58 P.3d at 1027 ("[T]he crux of our examination is not compliance with or violation of the prescribed procedure; rather it is determining whether Respondents had a preexisting entitlement which gives rise to constitutional due process guarantees....").

## II.  Facial Challenges

Plaintiffs also contend that the trial court erroneously rejected their facial challenges to the Town Code.  Again, we do not agree.

The Code is a legislative enactment and is presumed valid.  *See Sundance Hills Homeowners Ass'n v. Bd. of County Comm'rs,* 188 Colo. 321, 329, 534 P.2d 1212, 1217 (1975);  *Ford Leasing Dev. Co. v. Bd. of County Comm'rs,* 186 Colo. 418, 426, 528 P.2d 237, 241 (1974).  The party challenging the validity of an ordinance has the burden of proving its invalidity beyond a reasonable doubt.  *Bd. of County Comm'rs v. Simmons,* 177 Colo. 347, 351, 494 P.2d 85, 87 (1972).  Our review of a facial constitutional challenge is de novo.  *See Gen. Motors Corp. v. City & County of Denver,* 990 P.2d 59, 66–67 (Colo. 1999).

### A.  Sufficiency of Notice to Property Owners

Our determination that the Code does not confer upon Town landowners a protected property interest in the denial of others' permit applications is dispositive of plaintiffs' argument that the Code's notice and hearing provisions concerning review of those applications are constitutionally insufficient.  *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950) ("the Due Process Clause . . . require[s] that deprivation of life, liberty or property . . . be preceded by notice and opportunity for hearing appropriate to the nature of the case");  *cf. Rael v. Taylor,* 876 P.2d 1210 (Colo.1994) (notice required to be given when individuals' property interests in large parcel of land were to be eliminated by registration).  Because plaintiffs have no protected property right, notice and the opportunity for a hearing are not constitutionally required.

### B.  Vagueness of Notice Provisions

The absence of a protected property interest does not preclude plaintiffs from asserting a facial vagueness challenge.  *See Condiotti v. Bd. of County Comm'rs,* 983 P.2d 184, 186 (Colo.App.1999) (property owners have standing to make facial challenge to land use laws).  However, we disagree with plaintiffs' contention that the ordinance is unconstitutionally vague.

A statute or ordinance is unconstitutionally vague only if persons of common intelligence must guess at its meaning or would differ as to its application.  *See Collins v. Jaquez,* 15 P.3d 299, 302 (Colo.App.2000).  A reviewing court should interpret a statute, if possible, in a manner that will not render it unconstitutional.  *Powell v. City of Colorado Springs,* 131 P.3d 1129, 1134 (Colo.App. 2005)(*cert. granted* Apr. 10, 2006, 2006 WL 1628167);  *see Sanger v. Dennis,* 148 P.3d 404, 411 (Colo.App.2006) (facial challenges must be rejected unless there exists no set of circumstances in which the statute can be constitutionally applied).

As we understand it, plaintiffs argue that the Code is so unclear and confusing that they, and presumably other Town property owners, cannot understand how to navigate the process of design review under the Code.  Specifically, plaintiffs point out that while Ord. No. 74–2, art. XI, § 6, 4–16–74, sections 21–299 and 21–305(b) provide that the design review process is intended "to insure that growth and development is in accordance with the wishes of the residents and property owners thereof" and mandate that "final decisions [on permit applications] shall be made on the basis of the application, and evidence, comments from consultants and testimony," yet the Code does not state that a public hearing is required for applications for design review.  Based on this omission, plaintiffs argue that the Code is inconsistent and confusing because they do not understand how the Planning Commission can consider comments, testimony, and the wishes of residents and property owners like themselves unless a public hearing is required.  We perceive neither inconsistency nor vagueness.

First, the procedures and requirements for the design review process are set forth plainly and with particularity.  *See* Ord. No. 74–2, art. XI, § 1, 4–16–74, sections 21–299 (purpose), 21–300 (administration), 21–301 (required approval), 21–301.1 (preapplication conference), 21–302 (required information for design review), 21–303 (approval procedure), 21–306 (design guidelines), 21–307(fee), 21–

308 (appeal). After the Planning Commission receives the application materials from the applicant, the Commission must hold a meeting to conduct design review. *See* Ord. No. 74–2, art. XI, § 5, 4–16–74, section 21–303. The Commission also must notify the applicant of the meeting. *See* Ord. No. 74–2, art. XI, § 5, 4–16–74, section 21–303.

Although the Code requires the Commission to take into account the wishes of residents and property owners, and to base its design review decision on numerous considerations, including any testimony given, *see* Ord. No. 74–2, art. XI, § 6, 4–16–74, sections 21–299 & 21–305(b), it does not require the format of a public hearing. Rather, the Code anticipates that any testimony may be provided at the design review meeting from the applicant, experts, residents, property owners, or commission members or staff who have solicited views of other property owners.

█ We also reject plaintiffs' suggestion that the Code is vague because "design review" is not specifically listed in the exceptions to the notice requirements for public hearings contained in § 2–277. Section 2–277 provides:

> Not less than fifteen (15) days prior to the date set for the public hearing, the town clerk shall cause a copy of a notice of the time and place of such hearing to be published once in a newspaper of general circulation in the town. A copy of such notice shall be mailed by certified mail, return receipt requested, to the owners of all properties within a radius of two hundred (200) feet of the exterior lot line of the lot, tract or property affected by such hearing, except for hearings under the subdivision regulations of the town not including a zoning change, and except for amendments to the zoning ordinance for the town, instituted by the town.

Ord. No. 83–8, § 6, 6–4–83. By its plain terms, § 2–277 applies only to those situations in which a public hearing is otherwise required.

Based on this disposition, we need not address the other contentions of the parties.

The judgment is affirmed.

Judge NEY * and Judge NIETO * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.